**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 23-cr-202 (BAH)** |
| | : | |
| **KENNETH ADEMOLA OLUGBENGA,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S OMNIBUS MEMORANDUM**
**IN SUPPORT OF PRETRIAL DETENTION AS TO ALL DEFENDANTS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that each of the defendants in this case be detained pending trial under the following statutory authority:

- Khali Brown and David Penn:  18 U.S.C. §§ 3142(f)(1)(B) (an offense carrying a maximum sentence of life imprisonment—specifically, 18 U.S.C. § 924(c), and in the case of Khali Brown, 21 U.S.C. § 841(b)(1)(A)(vi)); (f)(1)(C) (serious drug felony); (f)(1)(E) (a felony involving a firearm that is not a crime of violence)

- Kenneth Olugbenga and Miasiah Brown:  18 U.S.C. §§ 3142(f)(1)(B) and (f)(1)(C)

- Tristan Ware:  18 U.S.C. §§ 3142(f)(1)(B) and (f)(1)(E)

- Ronald Dorsey, Aaron Mercer, Cameron Reid, Herman Signou, Angel Suncar:  18 U.S.C. § 3142(f)(1)(C)

- Antonio Bailey, Anthony Bailey:  18 U.S.C. § 3142(f)(1)(E) and (f)(2)(A) (flight risk).

With respect to each defendant, with the exceptions of Anthony Bailey and Antonio Bailey, there is a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the Defendants' appearance in this case and otherwise protect the community, pursuant to

18 U.S.C. § 3142(e)(3)(A).

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

## APPLICABLE LAW

Pursuant to 18 U.S.C. §§ 3142(e)(3)(A), there exists a rebuttable presumption as to all defendants, but for Anthony Bailey and Antonio Bailey, that no conditions or combinations of conditions can effectively ensure the Defendants' appearance in this case and otherwise protect the community. The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). For a detention decision based upon risk of flight, the government only need prove by a preponderance of the evidence that there are no conditions or combinations of conditions that will assure the defendant's appearance as required. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986). Furthermore, at a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In considering whether there are conditions of release, which will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, along with the applicable rebuttable presumption, the government respectfully submits that there

is no condition, or combination of conditions, that would assure the safety of the community or the Defendants' appearance at future proceedings.

## FACTUAL BACKGROUND

Beginning in June 2022 and continuing through present day, members of the MPD Violent Crime Suppression Division ("VCSD") in conjunction with the DEA, ATF, FBI and IRS have been investigating the Kennedy Street Crew ("KDY"), which largely operates in the 100-1200 blocks of Kennedy Street NW, Washington, D.C. and surrounding streets. KDY is known by law enforcement as one of the largest crews in Washington, D.C. based on both territory and its vast membership that includes, but is certainly not limited to, the defendants. Law enforcement further identified several commercial businesses, public recreation centers, residences, and day care facilities that are surrounded by prolific "open air" narcotics trafficking markets and incidents of violent crime, which include shootings and homicides. In functioning as a drug trafficking organization, KDY is involved in the distribution of fentanyl, marijuana, and crack cocaine, among other controlled substances.

A direct consequence of the KDY crew's drug trafficking operation, in conjunction with its expansion and protection of crew-controlled territory, is a marked rise in crimes of violence and homicides in the Kennedy Street neighborhood. Over the duration of the charged conspiracy, from June 2019 to present, the following crimes of violence have occurred in the Kennedy Street Neighborhood: five homicides, resulting in the deaths of seven and the wounding of six additional individuals; one assault with the intent to kill, which resulted in the wounding of three individuals; and 19 assaults with a deadly weapon, which have produced approximately two dozen adult victims. In addition to the seven dead and approximately three-dozen additional victims, seven juveniles have also been victims of the above-listed crimes of violence. Beyond these incidents,

3

during the same time period, there have been approximately 70 additional reports of unlawful discharges in the Kennedy Street Neighborhood during the same time period. Notably, these statistics only account for crimes of violence and firearms-related incidents in one neighborhood during the time period alleged in the indictment; it is difficult to estimate with any degree of precision the number of retaliatory and/or crew-related shootings involving KDY in and around the District of Columbia. Put simply, the KDY crew is a driver of the cycle of violence associated with drug trafficking and firearms that has plagued the Kennedy Street Neighborhood for years.

Through undercover surveillance of the KDY crew, law enforcement identified three known drug points within its territory, namely:  the 600 block of Kennedy Street, NW; the 500 block of Kennedy Street, NW; and the 5400 block of Georgia Avenue NW. Depicted below are images from surveillance of some of the defendants together at one such drug point in the 600 block of Kennedy Street NW.



*Khali Brown is in blue, Defendant 3 is in redacted, Juwan Clark is in green, and Anthony Bailey is in yellow.*



*Anthony Bailey is in yellow, Defendant 3 is redacted, David Penn is in purple, and Kenneth Olugbenga is in orange.*

Based on surveillance; controlled buys; airport interdictions; the review of financial records, flight records, and social media; and residential and vehicular search warrant executions, law enforcement identified the sixteen defendants charged in the Indictment as members of the KDY crew, who are involved in a drug trafficking conspiracy (involving fentanyl, marijuana, and cocaine base), money laundering, the unlawful possession of firearms (including machine guns), and in some instances, shooting at rival crew members on behalf of KDY.

Over the course of the investigation, law enforcement obtained the following results *before* indicting all 16 defendants, which presents a helpful snapshot of KDY's operations and its inherent dangerousness to the D.C. community:

- Narcotics recovered:  Fentanyl, Marijuana, Oxycodone, Crack Cocaine
- Controlled buy drug totals:[1]  Approx. 400.97g Fentanyl, 83.2 lbs Marijuana, 224.31g Crack

---

1 This quantity is for the defendants who are currently charged and does not take into account controlled buys of others who are not yet before the Court.

cocaine.

- Drug seizure totals:  Approx. 466.17 lbs Marijuana, 83.4g Fentanyl, 77.2g Crack Cocaine
  - 4/20/20 interdiction at San Francisco ("SFO"): 26.27 lbs Marijuana
  - 10/10/22 residential warrant at 2608 Southbridge Court, Bowie, MD:
    - 103 lbs Marijuana
    - 66.2g Cocaine Base
    - 106.4g Oxycodone
  - 10/25/22 interdiction at Dulles International Airport ("DIA"):  195.4 lbs Marijuana
  - 1/26/23 interdiction at Baltimore Washington International Airport ("BWI"):  86.4 lbs Marijuana
  - 1/26/23 residential warrant 1704 D Street, NW:
    - 46.4 lbs Marijuana
    - 351 fentanyl pills, 39.4g
    - 50 pills Oxycodone
  - Seizures from arrests of Ware, Olugbenga, Fields, and Penn:
    - Marijuana:  8.7 lbs
    - Fentanyl: 44g
    - Crack cocaine:  11g
- Firearms recovered: 28
  - Four are machine guns
  - Two are privately manufactured firearms ("PMF")
  - One has an obliterated serial number

On July 26 and 27, 2023, when law enforcement engaged in a joint operation to execute the arrest warrants, residential warrants in 17 locations (including residences in Maryland and Virginia), and 11 vehicular searches, the results were unsurprisingly overwhelming, as reflected in the below table. These recoveries confirm the KDY Crew's steady (and undeterred) access to firearms and narcotics, notwithstanding the many times law enforcement interdicted or searched their premises previously.

| ADDRESS | ASSOCIATIONS and/or DEFENDANTS PRESENT | EVIDENCE SEIZED |
|---|---|---|
| 1319 5th Street, NW | Khali Brown, Miasiah Brown Tristan Ware | • **Glock 22 w/ converter switch**<br>• **Glock 22 w/ an extended magazine and laser**<br>• **Glock 23 w/ converter switch and light**<br>• **Glock 30S w/ converter switch**<br>• **Glock 32 w/ converter switch**<br>• **Glock 19**<br>• Backpack containing high-capacity drum style magazine and additional magazine<br>• Multiple bags containing marijuana (475.7 g, 458.7 g, 446.7 g, 472.8 g, 358 g)<br>• Black backpack with blue design containing marijuana in three (3) separate bags (195.6 g, 347.1 g, 278.8 g)<br>• Bag containing marijuana (456.7g)<br>• Extended magazine containing twenty (20) rounds of ammunition<br>• $2,710 U.S. currency |
| 1223 Kennedy St, NW | Angel Suncar | • **Two Glocks (9mm and .357 caliber)**<br>• 1 BB gun<br>• 7 grams crack cocaine |
| 1206 Kennedy St, NW, #202 | Aaron Mercer | • Pyrex<br>• baking soda<br>• scale<br>• white powder (.3 grams) |
| 811 Jefferson St, NW, Apt. 104 | Kenneth Olugbenga | • one hardshell suitcase containing marijuana (4,137 grams),<br>• two hardshell suitcases containing documentation<br>• one backpack containing crack cocaine (902 grams) |

| | | |
|---|---|---|
| | | • one small plastic bag containing crack cocaine (28.7 grams)<br>• two boxes bearing writing "HBG"<br>• 635 grams of marijuana with scale |
| 715 18th St, NE Apt. 1 | Aaron Mercer | • **Ruger LC9 9mm pistol**<br>• Two phones<br>• Small amount of crack/cocaine<br>•  Pyrex dish possibly containing residue |
| 213 Seaton Pl NE, Apt. 1 | Antonio Bailey, Anthony Bailey, Cameron Reid, Herman Signou | • **Sig Sauer P320 9mm pistol**<br>• A large digital scale |
| 418 ½ Ingraham St, NW | David Penn | • **Two firearms** |

The investigation has revealed that the defendants, and KDY crew members generally, possess firearms in furtherance of the crew's drug trafficking activity and to reinforce its reputation among crews in Washington, D.C. Nine of the defendants before the Court are currently charged with firearms-related offenses, described *infra*, in connection with the 28 KDY firearms recovered prior to the indictment. This stockpile of firepower includes ten firearms that were recovered on January 26, 2023, at a stash house at 1704 D Street NE – depicted below.



The KDY crew's willingness to use violence to protect its stash as well as its reputation is evinced by NIBIN leads connecting **_half_** of the stash house firearms to eight shootings, including the November 18, 2022 shooting outside Jackson-Reed High School, described further below. Tellingly, some of these NIBIN leads overlap with one another – in other words, there are a couple instances of multiple KDY guns being used in the same shootings. Below is a mere sample of some of the shootings that KDY guns are linked to, via NIBIN lead:

- 5/28/22 drive-by shooting at 3706 New Hampshire Avenue NW, in broad daylight. The victim is a known rival crew member, who required hospitalization upon being struck by gunfire.
- 10/10/22 shootings at two locations in Washington, D.C. and one location in Maryland. The victims of these shootings are associated with rival crews, including Riggs Park. The firearm that Penn sold on 2/23/23, was also used at one of the 10/10/22 D.C. shooting scenes, and the firearm that was recovered following Penn's arrest on 2/3/23, was used at the other 10/10/22 D.C. shooting scene. Notably, one of the 10/10/22 shootings occurred at the house of a decedent's family. The circumstances surrounding the decedent's murder are referenced in Khali Brown's music video, "Broke/Dead Opps", described more fully below.
- 12/19/22 shooting at 801 Kennedy Street NE, resulting in damage from gunfire to the property of innocent bystanders.
- 12/23/22 shooting involving two suspects who fired into a recreation center located in Riggs Park (rival crew) territory, resulting in two victims being hit by gunfire.
- 1/23/23 shooting at 4335 4ᵗʰ Street, SE, where officers responding to sounds of gunshots found 100 cartridge casings. No gunshot wound victim was found, but numerous individuals reported extensive damage to their property from gunfire.

The KDY crew's tactics extend beyond narcotics trafficking and shooting at their opposition, though. Members of the crew – namely, Olugbenga, Fields, Clark, and Dorsey – have engaged in efforts to cover their tracks, in particular, the source of drug money. This is evident from the establishment of a phony business and their efforts to wash their drug money through the use of casinos.

# ARGUMENT

**The Defendants Should Be Detained Pending Trial Because They Pose a Danger to the Community and a Flight Risk**

In light of the nature and circumstances of the offenses charged, the weight of the evidence against each defendant, each defendant's criminal history and characteristics, and the dangers to the community posed by any defendant's release, the defendants cannot overcome the presumption that they are a danger to the community and a risk of nonappearance.

## A.    The Nature and Circumstances of the Offense

The nature and circumstances of the charged offenses weigh strongly in favor of detention. The grand jury found probable cause to believe that all 16 defendants have been engaged in a drug trafficking conspiracy since June 2019 to distribute 100 kilograms or more of marijuana, 400 grams or more of fentanyl, and a detectable amount of cocaine base. These are dangerous drugs that are devasting local communities, causing overdose deaths (particularly fentanyl), and provoking violence (both domestic and drug-rival related). As explained above, the 16 defendants in this case essentially commandeered an entire portion of a local community in D.C. and therein established an open-air drug market. As part of the conspiracy, five of the defendants (Olugbenga, Mercer, Penn, Dorsey, and Antonio Bailey) engaged in the controlled sale to undercover agents of narcotics (and in the case of Penn, two firearms); several of the defendants smuggled bulk quantities of marijuana into the D.C. area; nine of the defendants were charged with possession of firearms, to include machine guns, that were being used, in part, to facilitate their drug trafficking activities on behalf of the crew; and four of the defendants were charged with conspiracy to commit money laundering for attempting to conceal the true source of their drug proceeds through establishment of a phony business and the use of casinos.

The charges against the defendants expose them to serious periods of incarceration. Based

10

on the narcotics conspiracy charge alone, each defendant (with the exception of Antonio Bailey, Anthony Bailey, and Miasiah Brown), faces up to 20 years in prison under 21 U.S.C. § 841(b)(1)(C), while Khali Brown faces a minimum sentence of 10 years and up to life under 21 U.S.C. § 841(b)(1)(A)(vi); Mercer and Penn face a minimum sentence of 5 years and up to 40 years' incarceration, under 21 U.S.C. § 841(b)(1)(B)(vi); and Keion Brown, Fields, Olugbenga, Williams, Reid, and Signou face a minimum sentence of 5 years and up to 40 years' incarceration under 21 U.S.C. § 841(b)(1)(B)(vii). This does not account for the mandatory minimums half of the defendants face for use of firearms in furtherance of their drug trafficking crimes. Namely, of the so-far apprehended defendants, Khali Brown and Penn face 30-year mandatory minimums for their possession of machineguns to facilitate their drug trafficking crimes. Keion Brown, Miasiah Brown, Fields, Olugbenga, Penn, and Ware face 5-year mandatory minimums for the same conduct, albeit not involving a machinegun.

In addition to the severe danger posed by the rampant proliferation of firearms, most notably automatic firearms, within the KDY crew, it is also notable that the DTO supplies large quantities of fentanyl to the community. At this point in the opioid epidemic, it is common knowledge that fentanyl kills. According to the DEA, "fentanyl is a Schedule II controlled substance that is similar to morphine but about 100 times more potent. . . . Because of its potency and low cost, drug dealers have been mixing fentanyl with other drugs including heroin, methamphetamine, and cocaine, increasing the likelihood of a fatal interaction. . . . Two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage."[2] According to the CDC, overdose deaths in the United States continue to rise, with more than 80 percent of

---

[2] https://www.dea.gov/resources/facts-about-fentanyl

such deaths attributed to synthetic opioids, primarily fentanyl.[3] In 2021, the United States set a record high, with drug overdose deaths toppling 100,000 and fentanyl causing nearly two-thirds of these deaths.[4] According to Howard University Hospital, the District of Columbia suffers close to 400 opioid related deaths per year—contributing to the third highest opioid mortality rate in the country with 34.7 deaths per 100,000 persons compared to the national average of 14.6 deaths.

What makes this conduct all the more egregious, as detailed more specifically below in the defendant-specific sections of this memorandum, is that the defendants' social media activity strongly suggests that KDY crew members knew that they were dealing counterfeit pharmaceutical medication disguised and passed off as legitimate oxycodone. Nevertheless, they continued to advertise on social media, and in direct communications to customers, that KDY crew members had legitimate oxycontin that was in fact a significantly more lethal substance. Beyond the escalation of violence in the community, release of the defendants poses a separate, independent danger to the community through their drug trafficking.

Finally, the fact that law enforcement found additional firearms, including multiple suspected machine guns, and narcotics when executing its arrest and search warrants on June 26 and 27, 2023, and recovered additional evidence that is still being evaluated, makes extremely likely the probability of a Superseding Indictment, which could subject the defendants to even higher penalties, rendering all the more likely their risk of flight.

### B. The Weight of the Evidence Against Each Defendant

The weight of the evidence against each defendant is robust and supports their detention for the following reasons:

---

[3] https://www.cfr.org/in-brief/us-fentanyl-crisis-what-know
[4] https://www.cnn.com/2021/11/17/health/drug-overdose-deaths-record-high/index.html

i.     _Kenneth Olugbenga – Counts 1, 25-27, 32:_

MPD has conducted numerous controlled buys with Olugbenga, Mercer, and Penn, and a multiple controlled buys with Antonio Bailey and Dorsey. Each of these undercover controlled purchases were video-recorded and tracked by multiple MPD agents while the controlled purchases occurred.

From July 2022 to May 2023, MPD conducted eleven controlled buys of cocaine base with Olugbenga, resulting in the purchase of 52.3 grams of cocaine base.

In February 2023, after fleeing from law enforcement officers and abandoning his vehicle, Olugbenga's Ford Econoline van was searched incident to a search warrant. His passport, more than a kilogram of marijuana, distribution quantities of crack cocaine and a loaded Glock 29 handgun were recovered from the vehicle. DNA analysis of the firearm confirms Olugbenga's possession of the firearm.

This recovery is just a snapshot of Olugbenga's broader activity. As part of the drug trafficking conspiracy, some of the defendants make frequent trips to the Western United States, typically to Los Angeles and Southern California, to smuggle into Washington, D.C. bulk quantities of marijuana purchased from dispensaries for resale in the D.C. area at inflated prices. The below chart shows the overlapping travel to and from California between Olugbenga and other defendants listed in the below table.

| Year | California Travel Proximate to Other KDY Members | KDY Members/Associates |
|------|--------------------------------------------------|------------------------|
| 2019 | 41 | Warren Fields III |
| 2020 | 13 | Warren Fields III, Ronald Dorsey, Juwan Clark |

| 2021 | 17 | Warren Fields III, Khali Brown, Juwan Clark |
| 2022 | 11 | Warren Fields III, Khali Brown, Ronald Dorsey, Tristan Ware, Herman Signou |

What's more, three airport interdictions have confirmed the specific purpose behind these quick trips to California. On April 15, 2020, Olugbenga's checked luggage for his flight from San Francisco International Airport ("SFO") to Dulles International Airport ("IAD") was flagged by TSA as containing suspected narcotics. Within his luggage were two large vacuum-sealed bags of marijuana, weighing 26.27 pounds. The below ledger from Olugbenga's iCloud shows not only his estimated losses stemming from the interdiction, but it also notes payments owed by defendants Suncar (aka, "Couqi" or "Coqui") and Clark (aka "Squirrel"). As discussed further below, this is not the only such ledger found from Olugbenga.



Defendants Olugbenga and Dorsey also function as money launderers for the crew, washing money through D.C.-area casinos, primarily MGM National Harbor, as well as his car washing business, Heavy Baggz LLC. Heavy Baggz LLC (HBC LLC) is a company that was set up as a means to deposit proceeds of illicit narcotics sales. The Heavy Baggz account was set up by Olugbenga at Navy Federal Credit Union (NFCU). Olugbenga deposited cash and transferred funds from CashApp into the Heavy Baggz account. HBG LLC purports to be a music, entrepreneurial, and car detailing business but text messages prove Olugbenga performed almost no washing/detailing services. There are over $40,000 of personal expenses paid directly from the Heavy Baggz account. Purchases include airfare, restaurants, sports betting, rideshare services, and retail stores. There are 26 withdrawals for a total of $17,994.74 from the Heavy Baggz LLC account at MGM National Harbor. Many of the withdrawals take place shortly after a transfer of funds from Olugbenga's personal NFCU account. Olugbenga transfers $24,030.06 from his person NFCU account to the Heavy Baggz account. There are 17 deposits from Cash App into the Heavy Baggz Account for a total of $21,802.

Based upon a review of Olugbenga's iCloud extraction, he uses this business, along with phony paychecks, as a way of making his means of income appear legitimate. Olugbenga actively launders the drug proceeds through casinos, most notably MGM National Harbor, in order to attempt to make the funds appear as if they are derived from a legitimate source. For example, Olugbenga indicated his need to make his income look authentic as recently as 2019:



Recoveries from Olugbenga's van in February 2023 further illustrate the purpose of HBG LLC. The phony pamphlet bears both Olugbenga's and Dorsey's contact information (seen in the bottom of the screenshot below):



The two phone numbers are both associated with Olugbenga and Dorsey, respectively. Articles of Incorporation, financial records, and business filings confirm that Olugbenga and Dorsey are co-owners/managers of the business.

## Navy Federal®
### Business Solutions Membership Application

Navy Federal reserves the right to request additional identification.
Misplace your EIN? Go to www.IRS.gov and search "Misplace Your EIN" or call 800-829-4933.

| Business Access Number (For Office Use Only) |
| --- |
| |

**Business Information** *Please include appropriate proof of existence of your Business when mailing or bring it in with you when opening account at branch.*

| | |
| --- | --- |
| Name of Business | HBG LLC |
| DBA Name (If applicable) | |
| Business Tax ID No. | 852515130 |
| Business Phone No. | 2024031947 |
| Alternate Phone No. | |
| Physical Address of Business | 602 Hamilton St NW Washington, DC 20011 |
| Mailing Address of the Business | PO Box  56132, Washington, DC, 20040 |
| Additional Locations of Business | |
| Business Email Address | olugbenga.kenneth@yahoo.com |
| Website Address | |
| Date Business Established | 7/28/2020 |
| Legal Structure of Business | Limited Liability Company |

| Name | Address |
| --- | --- |
| Ronald Dorsey | 602 Hamilton Street Northwest, Washington, District of Columbia 20011 |

**Eighth:** Organizers executing this form:

Ronald Dorsey

What's more, a receipt book was also located in the front compartment of the van. The receipts are clearly fictitious (for example, as displayed below, there are multiple "receipts" made out to several known associates over the same single day or two-day period).

17



ii.      _Ronald Dorsey – Counts 1 and 32:_

As discussed above, Defendant Dorsey works in close coordination with Defendant Olugbenga, often serving as a middle-man for narcotics transactions in addition to the shared money laundering enterprise through HBG LLC. For example, in October 2022 and March 2023, law enforcement conducted two controlled purchases of cocaine base (10.40 g) and marijuana (30.37 g) with Dorsey that had been facilitated in conjunction with Olugbenga. Dorsey's travel records to California bear this out, including 15 round trips with KDY crew members over the life of the conspiracy, most frequently with Olugbenga.

Dorsey uses social media to communicate directly with his customers, quoting prices for certain quantities of narcotics (Dorsey in green):



Dorsey's communications with Olugbenga, excerpted below, further illustrate their coordinated activities:



iii.    *David Penn – Counts 1, 18-24:*

The weight of the evidence against Defendant Penn is overwhelming. As for recorded operations by law enforcement involving Penn, law enforcement has obtained from Penn, during seventeen controlled buys, law enforcement purchased 11.15 grams of cocaine base, 257.73 grams of fentanyl, and two firearms from December 2022 to May 2023. During one of those sales, Penn flashes a firearm on a video recording immediately after selling fentanyl to an undercover officer, displayed in a screenshot below.



Moreover, as to the separate possession of a firearm in furtherance of a drug trafficking offense, Defendant Penn was apprehended in the 4th District on February 3, 2023, not far from KDY territory. Penn's female acquaintance was operating the vehicle, and law enforcement was alerted to the fact that Penn had an active Virginia state fugitive warrant. After the vehicle was stopped, law enforcement noticed a partially-consumed wine bottle in the front passenger's seat. Penn positively identified himself, and a search of the vehicle was conducted. More than a kilogram of marijuana, 44 grams of fentanyl, and crack cocaine was discovered in the backseat of the vehicle, along with approximately $4,000 in Penn's possession, and a loaded Glock 32 handgun equipped with a switch, an extended magazine containing 31 rounds, and bearing Penn's DNA on the magazine was found in a backpack.

These two incidents are just a sampling of the overwhelming evidence against Penn. This evidence weighs heavily in favor of detention.

iv.     *Khali Brown – Counts 1, 7-10, 13, 17:*

The weighty evidence against Khali Brown compels his detention. His integral role in the narcotics trafficking conspiracy is borne out by his flight records from 2021 to 2023, showing him traveling frequently to and from California on quick 2-3 day trips notwithstanding the long flights. Importantly, these trips overlap with his co-defendants' ventures to and from California on similarly quick turnaround times. The below chart, based on flight records from major airlines, provides a snapshot of the frequency with which Khali Brown would fly to and from California in 2022. The highlighted flights show Khali Brown's travel overlapping with other KDY members, namely Reid and Olugbenga. The highlighted red flight shows the flight involved in the Dulles interdiction described below.

| | |
|---|---|
| Jan 7, 2022 DCA → LAX [American]<br>Jan 8, 2022 BWI ← LAX [United] | Apr 9, 2022 BWI ← LAX [United]* |
| Jan 14, 2022 DCA → LAX [American]<br>Jan 15, 2022 BWI ← LAX [United] | Apr 17, 2022 BWI ← LAX [United]* |
| Jan 23, 2022 DCA → LAX [American]<br>Jan 23, 2022 BWI ← LAX [United] | Apr 25, 2022 BWI → SFO [United]<br>Apr 26, 2022 BWI ← LAX [United] |
| Feb 4, 2022 DCA → LAX [American]<br>Feb 5, 2022 BWI ← LAX [United] | May 22, 2022 BWI → SFO → BUR [United]<br>May 23, 2022 BWI ← LAX [United] |
| Feb 10, 2022 DCA → PHL → LAX<br>[American]<br>Feb 12, 2022 BWI ← LAX [United] | *June 1, 2022 LAS → SFO [United]*<br>June 1, 2022 SFO → BUR [United]<br>June 2, 2022 BWI ← LAX [United] |
| Feb 22, 2022 DCA → LAX [American]<br>Feb 23, 2022 BWI ← LAX [United] | June 9, 2022 BWI → SFO [United]<br>June 12, 2022 BWI ← LAX [United] |
| Feb 26, 2022 DCA → LAX [American]<br>Feb 28, 2022 BWI ← LAX [United] | July 17, 2022 DCA → EWR → SFO [United]<br>July 17, 2022 OAK → LAX [Southwest]<br>July 19, 2022 BWI ← LAX [United] |
| Mar 6, 2022 BWI ← LAX [United]* | Aug 2, 2022 IAD → SFO [United]<br>Aug 4, 2022 BWI ← LAX [United] |
| Mar 12, 2022 DCA → LAX [American]<br>Mar 14, 2022 BWI ← LAX [United] | |
| Mar 24, 2022 BWI ← LAX [United]* | Sept 29, 2022, 2022 BWI ← LAX [United] * |
| Mar 29, 2022 DCA → LAX [American]<br>Mar 31, 2022 BWI ← LAX [United] | Oct 23, 2022 IAD → SFO → LAX [United]<br>Oct 25, 2022 IAD ← LAX [United] |

22

What's more, cell site location information ("CSLI") corroborates that these overlapping trips were for a similar and distinct purpose – to obtain marijuana to bring back to D.C. By way of example, the below map, which displays CSLI for Khali Brown, Reid, and Olugbenga on June 10, 2022, shows them in the same area of Los Angeles approximately around the same time, and near a marijuana dispensary, Backpack Boyz.



Two airport interdictions provide further evidence of Khali Brown's involvement in the scheme to transport marijuana into the D.C. area for sale as part of the crew's activities. On October 25, 2022, Khali Brown, Cameron Reid, and two other KDY associates (depicted during the interdiction in the below photographs) – all of whom were flying back from Los Angeles – were intercepted at the baggage carousel at IAD after a K9 positively indicated upon their traveling party's checked-in luggage. Several pieces of luggage were seized, and a search revealed 195.4 pounds of marijuana in vacuum-sealed bags, packaged much like Olugbenga's when he was intercepted during the April 15, 2020 interdiction at SFO, described *supra*.



On January 26, 2023, another interdiction operation occurred at BWI; Khali Brown, Herman Signou, and another KDY associate were flying back from Los Angeles with several pieces of checked-in luggage. A K9 positively indicated upon luggage associated with their traveling party, and law enforcement seized five pieces of their luggage, therein finding 86.4 pounds of marijuana similarly packaged in vacuum-sealed bags. See below for a comparison of the packaging across the three different airport interdictions involved in this investigation.



*4/15/20 Interdiction (SFO)*



_10/25/22 Interdiction (IAD)_          _1/26/23 Interdiction (BWI)_

During the January 26, 2023 interdiction at BWI, Khali Brown and Signou snuck past officers out of the airport with two pieces of luggage, but surveilling officers followed their vehicle to 1704 D Street NE, later discovered to be a stash house. Surveillance officers watched Khali Brown and Signou enter 1704 D Street NE with the two pieces of luggage. Later that same day, upon securing a residential search warrant, law enforcement entered the stash house. At the time law enforcement entered the residence, Khali Brown, Tristan Ware, Herman Signou, Defendant 3, Defendant 7, and four juveniles were in the basement. Scattered throughout that same basement of the stash house, law enforcement found ten loaded firearms, two of which were machine guns. Four of those firearms were found in a suitcase (shown below) that also contained bulk quantities of marijuana, 351 pills of fentanyl (approximately 39.4 g), and 50 pills of Oxycodone.



At the bottom of the basement stairs was another suitcase containing more distribution quantities of bulk marijuana. Khali Brown's and his mother's mail matter was found in a bag by

this suitcase at the bottom of the basement stairs. Moreover, Khali Brown's DNA is included in the DNA profiles for two of the firearms recovered throughout the house (depicted below),[5] including the machinegun with an obliterated serial number, that was used in the November 18, 2022 shooting at Jackson-Reed High School, described *infra*.

 

A latent print lifted from the magazine of the below depicted Glock 19 was identified as Khali Brown's. This firearm was also recovered from the suitcase within the basement bedroom that contained three other firearms, bulk marijuana, fentanyl, and oxycodone pills.



Any question as to Khali Brown's procurement and trafficking of marijuana and fentanyl is squarely addressed by not only the brazen social media ads for the sale of both on his Instagram, but from conversation threads within his Instagram returns. An extraction from his cellphone that was recovered at the time of his January 26, 2023 arrest confirms the same. See below for a mere

---

5 The firearm to the left is the machine gun with an obliterated serial number that was found in the common area of the basement. The firearm to the right was recovered from within the above-referenced suitcase in a bedroom of the basement that also contained three other firearms, bulk marijuana, fentanyl, and oxycodone pills.

sample of the numerous images of distribution-quantities of apparent marijuana found in Khali Brown's phone:



In the below message thread between Suncar (blue text) and Antonio Bailey (green text), they reference Khali Brown, aka "Migo Lee" having "za", known to law enforcement as an exotic or high-end type of marijuana.



In the below message threads, Khali Brown (green text bubble) references going to California to up his marijuana supply:



moneymelo3x
They be kinda high I got ppl in Cali shit gas
11/19/2021 11:01:59 PM(UTC+0)

ynv.wopskino
Yea that's where I'm at
11/19/2021 11:02:08 PM(UTC+0)

moneymelo3x
It don't be the low za tho
11/19/2021 11:02:33 PM(UTC+0)

moneymelo3x
You in northern Cali ?
11/19/2021 11:02:43 PM(UTC+0)

ynv.wopskino
LA I got folks in the north tho
11/19/2021 11:03:09 PM(UTC+0)

moneymelo3x
That shit be cheap in northern Cali
11/19/2021 11:03:38 PM(UTC+0)

ynv.wopskino
Nahfr shit cheap as hell
11/19/2021 11:03:50 PM(UTC+0)



workintrigga
Bring 2 for me
2/27/2021 6:56:28 PM(UTC+0)

migo.lee
Bouta say I only got percs left the weed gone I'm bouta fly out tho
2/27/2021 6:56:59 PM(UTC+0)

workintrigga
Eight bring me 3
2/27/2021 6:59:05 PM(UTC+0)

workintrigga
Nigga goin thru it u still got sum ps
2/28/2021 3:40:20 AM(UTC+0)

migo.lee
Yea
2/28/2021 3:41:13 AM(UTC+0)

workintrigga
Bouta come grab 2 a ask Kenny can he throw me a zip I wudda asked i
Aint got his number n I know I owe u fwm I got chu
2/28/2021 3:47:14 AM(UTC+0)

workintrigga
Soon dat shit hit my cashapp I got chu
2/28/2021 3:47:45 AM(UTC+0)

Also included below is a mere sample of the clear advertisements on Khali Brown's Instagram for the sale of apparent fentanyl:



The below message thread references Khali Brown's (green text bubble) involvement in the sale of fentanyl, or "fent".



From: 45840957859 w0cccxx556
U got sum jammers
11/6/2021 3:18:35 PM(UTC+0)

From: 49883536353 ynv.wopskino (owner)
Yea
11/6/2021 3:24:41 PM(UTC+0)

From: 45840957859 w0cccxx556
Wat type joints u got
11/6/2021 3:26:19 PM(UTC+0)

From: 49883536353 ynv.wopskino (owner)
K 57
11/6/2021 3:45:39 PM(UTC+0)

8215

From: 45840957859 w0cccxx556
Wats da ticket
11/6/2021 3:45:58 PM(UTC+0)

From: 49883536353 ynv.wopskino (owner)
I'm going 30
11/6/2021 3:46:07 PM(UTC+0)

From: 45840957859 w0cccxx556
lght dats cool u goin b at da spot
11/6/2021 3:46:46 PM(UTC+0)



From: 4081424245 1bigogpurpin14
Uu Got Some Jammers Brodiee
1/2/2022 1:14:03 AM(UTC+0)

From: 49883536353 ynv.wopskino (owner)
Yea ima call you when I come back outside
1/2/2022 1:14:16 AM(UTC+0)

From: 4081424245 1bigogpurpin14
Bet
1/2/2022 1:14:25 AM(UTC+0)



1muvakutmyselfinfrontmykids_
you got some percs ?
3/23/2022 3:17:57 PM(UTC+0)

ynv.wopskino
Nah
3/23/2022 5:08:36 PM(UTC+0)

ynv.wopskino
Fent
3/30/2022 5:49:20 PM(UTC+0)

1muvakutmyselfinfrontmykids_
Stfu
3/30/2022 5:52:27 PM(UTC+0)

ynv.wopskino
I'm fr
3/30/2022 5:52:54 PM(UTC+0)



Communications showing Kenneth Olugbenga referring customers to Khali Brown, aka "Migo Lee," for jammers, i.e., fentanyl, are also shown below:



The evidence against Khali Brown not only implicates him in drug trafficking and possession of firearms in furtherance thereof, though. Concerningly, the machinegun with an obliterated serial number found in the basement – with Khali Brown's DNA on it – is ballistically linked via NIBIN to a November 18, 2022 shooting outside of Jackson-Reed High School. On November 18, 2022 (less than a month after the IAD interdiction involving Khali Brown), a shooting occurred in front of Jackson-Reed High School, located at 3950 Chesapeake Street NW, Washington, D.C. Khali is believed to be among the shooting suspects – he is tied to the shooting by his connection to the suspect vehicle, CSLI, and the aforementioned NIBIN lead linking one of the two types of 9mm cartridge casings at the shooting scene to the machinegun found at 1704 D Street NE a couple months later. As referenced above, that same firearm has Khali Brown's DNA on it.

Based upon witness accounts conveyed to MPD investigators, on November 18, 2022, an exchange of gunfire occurred at approximately 2:40 pm, after which a witness (W-1, who was with ITS spouse at the time) observed a black male (hereafter, "S-1") with a black "Uzi," "spraying bullets" up the street toward Chesapeake Street before jumping into a black four-door vehicle

(initially described as a black Acura and subsequently described as a black Infiniti), with VA tag TXT 6922. W-1 called 911 to report the tag number of the suspect vehicle, which ITS spouse had relayed to W-1. During a Detective's more fulsome interview with W-1 and ITS spouse, they described the following to the Detective:  At the time of their observations, W-1 was in ITS car with ITS spouse, parked in the 5300 block of Fort Drive. W-1 described S-1 as a black male of thin build, approximately 27 to 28 years in age, and approximately 5'11 to 6'1 in height, wearing a grey jacket and jeans and a black knit hat. W-1 described the Uzi as black with a long 9- to 12-inch clip attached. According to W-1, after shooting, S-1 entered the passenger seat of a black Acura sedan bearing Virginia tag TXT6922, which was parked facing southbound in the wrong direction. The witness stated that IT last saw the suspect vehicle driving westbound toward Wisconsin Avenue NW.

Surveillance from the school shows six black males in dark clothing walking eastbound on Chesapeake Street NW at 2:18 pm. At 2:37 pm, five of the six males are seen running eastbound on Chesapeake, cutting through the school parking garage, and they are last seen running southbound on Nebraska Avenue at 2:38 pm. The camera at the front of the school, which faced Fort Drive and would have captured the shooting, was down/offline per the security manager of the school. Footage from the nearby Wawa, though shows the suspect vehicle, consistent with W-1's description, speeding away from the scene at 2:38 pm.

Approximately 21 shell casings – twelve 9mm casings and nine 40 caliber – were recovered from the scene, mostly from the 5300 block of Fort Drive NW. A review of vehicle registration records confirms that the suspect vehicle with VA tag TXT 6922, is registered to Khali Brown. A license plate reader check on that tag showed the suspect vehicle hitting at Military Road and 14th Street at 1446 hours, consistent with the flight path from the scene.

A review of Khali Brown's timing advance cell phone location data indicates that on November 18, 2022, his cell phone traveled south from Russett, Maryland, towards Northwest, Washington D.C. beginning at approximately 1:40 pm. At 2:36 pm, a historical precision point was captured on BROWN's mobile device indicating that his cell phone was located less than 0.2 miles from a cell tower located approximately 700 feet from the shooting in front of Jackson-Reed High School. The timing advance data further indicates that Khali Brown's mobile device left the general area surrounding Jackson-Reed High School by 2:49 pm and arrived back in the Russett, Maryland area by 3:35 pm.

Finally, the July 26, 2023 results from the search of a second apparent stash house – 1319 5th St NW – where Khali Brown, Miasiah Brown, and Tristan Ware were arrested, and where six firearms, four of which are suspected machineguns, were recovered, further corroborates the strength of the evidence in this case that Khali Brown's persistent unlawful possession of firearms.

    v.      *Miasiah Brown – Counts 1 and 6:*

The evidence against Miasiah Brown for the charged offenses is strong and weighs in favor of detention. Such evidence consists of the recovery, on October 10, 2022, of three firearms and substantial narcotics from Miasiah Brown's mother's home at 2608 Southbridge Court in Bowie, Maryland – wherein Miasiah Brown, Khali Brown, Defendant 3, and Defendant 7 had bedrooms. One of the three firearms recovered at this location was found in Miasiah Brown's bedroom. That day, law enforcement responded to the location upon receipt of a 911 emergency call for a shooting. They were further notified of a second call for a report of shots fired on Trotter Park Lane, adjacent to the backyard of 2608 Southbridge.

Although Miasiah's (and Khali's) mother denied to police that anyone had been shot at the location, law enforcement noticed multiple bullet holes in the living room window and cartridge

casings as well as a blood trail on the front entryway of the residence. They ultimately obtained a residential search warrant and therein found bulk quantities of marijuana – aggregated at 103 lbs – throughout the house, including in luggage similar to the luggage seized at interdictions and found at 1704 D Street NE on January 26, 2023.



In the bedroom identified by Miasiah's mother as belonging to him, law enforcement found his ID card, school card, and VISA card.



They also found a loaded Glock 45 with an extended magazine on the windowsill, 66.2

grams of cocaine base in a baggie, and, within a shoebox in his closet, they found $13,337 in cash.

 



The firearm recovered in Miasiah Brown's bedroom has not at this juncture been tested against Miasiah Brown's DNA, but it was tested against the other occupants of the house, to wit – Khali Brown, Defendant 3, and Defendant 7 – all of whom were excluded, which is consistent with its recovery in Miasiah Brown's bedroom and his possession of it.

The recoveries from his bedroom in their totality, combined with the bulk quantities of marijuana recovered throughout the residence that Miasiah lived in, strongly implicates him in trafficking of the recovered narcotics and doing so while armed. What's more, his social media activity corroborates as much. Below is a mere sample of the blatant advertisements for the sale of marijuana that Miasiah published on his Instagram account:



The evidence against Miasiah Brown may likely become even more robust given law enforcement's recoveries from 1319 5th Street NW on July 26, 2023, at the location and time of his arrest – namely the six firearms (four of which are suspected machine guns, and depending on forensic testing, could subject Miasiah to additional charges), multiple bags containing marijuana (475.7 g, 458.7 g, 446.7 g, 472.8 g, 358 g), a black backpack containing marijuana in three (3) separate bags (195.6 g, 347.1 g, 278.8 g), and bag containing marijuana (456.7g).

vi.    *Tristan Ware – Counts 1-4:*

The weight of the evidence similarly supports Ware's detention. This evidence stems, in part, from his June 20, 2022 arrest on the heels of law enforcement's observation of him leaving one of the known KDY drug points with a black bag in hand and what appeared to law enforcement to look like an L-shaped bulge in his waistband area.

That day, at approximately 4:30 p.m., officers in two vehicles were driving in the 500 block of Kennedy Street NW, when they saw three people, including Ware, at the corner of 5th and Kennedy NW. Upon noticing police presence, all three individuals separated, walking in different directions. One officer paid close attention to Ware, who was crossing the street and looking over his shoulder at the police vehicle. Officers made a u-turn and drove towards Ware, giving them an opportunity to notice a L-shaped bulge in Ware's right, front waistband area of his fitted pants. Officer Abdi notified the other officers over the air of what he had just observed, and Officer Alarcon voiced over the ops channel the same so that the police vehicle closest to Ware could stop him. Officers Wilson and Jegede, who were among the officers first approaching Ware also noticed the bulge.

Officers decided to stop and pat down Ware based on: the aforementioned observation of the bulge, Ware's reaction to police presence, and their knowledge of Ware's prior gun arrest (for which he was on supervision at the time). Officer Wilson pat the L-shaped bulge and immediately identified that Ware was armed. Officer Taher then recovered from inside Ware's compression shorts one black 9mm pistol with one live round in the chamber and 19 live rounds in a 19-round capacity magazine inserted into the firearm.

At the time of his arrest, Ware was holding a black, plastic shopping bag in his left hand. The bag was searched incident to his arrest, and therein officers recovered the following narcotics,

which are in a quantity and packaging more consistent with distribution than personal use:

- 1 clear plastic bag with marijuana, 11.8 ounces

- 12 pouches of edibles, and 2 empty pouches with green residue inside

In his pocket was a clear plastic bag with 2 white pills, labeled "10" on one side and "R/P" on the other (oxycodone), and in his left front pocket were $40.00.



Two of the pouches recovered from Ware were labeled "Backpack Boyz", the same California dispensary Olugbenga's, Khali Brown's, and Reid's CSLI placed them near 9 days earlier, on June 11, 2022 (referenced *supra*). In sum, the evidence against Ware on Counts 2 through 4 consists of multiple officers' observations, radio run communications memorializing such observations, bodyworn camera depicting the seizure of the firearm from Ware's waistband, and the recovered controlled substances.



Ware's involvement in the drug conspiracy is corroborated by his presence (with his co-defendants Khali Brown, Signou, and Defendants 3 and 7) at 1704 D Street NE on January 26, 2023, when 46.4 lbs of marijuana (and fentanyl and oxycodone) was recovered in the basement that he and his co-defendant had occupied. The likelihood of him happening to be at the wrong place at the wrong time is belied by his GPS data (at the time of the search warrant execution, Ware was on supervision and outfitted with a GPS device), shown below, which revealed his steady presence at the stash house throughout January 2023 and in the days and hours leading up to the aforementioned recoveries. Specifically, Ware's GPS device showed him at 1704 D Street NE on January 9, 14, 20, 25, and throughout 26, 2023, including during the time that Khali Brown and Signou walked in the two pieces of luggage into the residence after evading law enforcement during the BWI interdiction.



Moreover, flight records for Ware show him traveling to California, admittedly not as

frequently as his counterparts, but coinciding with their travel. In 2022, Ware traveled to LA on

at least three occasions for quick two-three day trips, and on at least one occasion, his travel

overlapped with his co-defendants, Khali Brown, Olugbenga, Signou, Reid, and Defendant 9.

Ware's social media communications corroborate his involvement in the ongoing

conspiracy. See below for an example of a communication thread from Ware's account (handle:

st6sdynv), by way of example.

| Timestamp | Party | Description |
|---|---|---|
| 6/14/2022 9:48:24 PM(UTC+0) | From: 27487990054 armree_22 | You out Cali still? Source: Instagram Warrant Return |
| 6/14/2022 9:49:05 PM(UTC+0) | From: 49986937597 st6sdynv (owner) | Yea Source: Instagram Warrant Return |
| 6/14/2022 9:52:31 PM(UTC+0) | From: 27487990054 armree_22 | That's why I was asking Fyd nigga  wat Cali lookin like Source: Instagram Warrant Return |
| 6/14/2022 9:53:06 PM(UTC+0) | From: 49986937597 st6sdynv (owner) | Man I'm laid back rn Source: Instagram Warrant Return |
| 6/14/2022 9:53:31 PM(UTC+0) | From: 49986937597 st6sdynv (owner) | I leave tomorrow doe Source: Instagram Warrant Return |
| 6/14/2022 9:55:29 PM(UTC+0) | From: 27487990054 armree_22 | That Cali weed got you right Source: Instagram Warrant Return |
| 6/14/2022 9:55:57 PM(UTC+0) | From: 27487990054 armree_22 | Wait til I go out that bitch . They gone hate me Source: Instagram Warrant Return |
| 6/14/2022 9:56:09 PM(UTC+0) | From: 49986937597 st6sdynv (owner) | Shit ain't nun my man at home got real candy Source: Instagram Warrant Return |

Also in full display in his social media returns are numerous brazen advertisements for the sale

of marijuana and other controlled substances



As referenced above in the case of both Khali Brown and Miasiah Brown, that Ware was arrested on July 26, 2023, in another stash house (1319 5th St NW) containing six firearms, four of which are suspected machine guns, presents the likelihood that the evidence against Ware will only strengthen with time.

*vii.    Antonio Bailey, Anthony Bailey, Cameron Reid, and Herman Signou – Count 1:*

In addition to the above-described evidence as to Defendants Reid and Signou, additional physical recoveries and associated evidence has been recovered from these individuals over the course of the investigation. For example, from Antonio Bailey, law enforcement conducted two controlled purchases of cocaine base (0.50 g) and marijuana (4.4 g) in April and June 2023.

During the early stages of the investigation into the KDY crew, law enforcement officers identified a stash house located in the 1300 block of Van Buren Street NW associated with Defendants Antonio and Anthony Bailey. Residential and fugitive search warrants were executed on the Van Buren residence on two separate occasions, March and July 2021. In March 2021, law enforcement officers executed a consensual entrance to the Van Buren residence pursuant to an active bench warrant for Defendant Antonio Bailey. After initially locating three firearms, MPD's

Gun Recovery Unit (GRU) was called and a separate Superior Court search warrant was obtained. The following three firearms were recovered: (i) a loaded Hi-point handgun with a high-capacity magazine (found in Defendant Signou's bedroom);[6] (ii) a loaded Privately made firearm with a Glock 23 slide with a high-capacity magazine; and (iii) a loaded Ruger 9mm, handgun. Firearms 2 and 3 were located in the same bedroom.[7] A further search of the residence revealed a loaded SCCY 9mm handgun discovered in Defendant Antonio Bailey's bedroom, as well as a loaded Ruger 9mm handgun discovered in Defendant Anthony Bailey's bedroom.[8]

Despite this encounter, evidence of the Defendants' ongoing participation in the charged conspiracy was found in the same Van Buren residence just four months later. In July 2021, members of MPD's GRU executed a residential search warrant where Defendants Anthony Bailey, Antonio Bailey, and Signou were once again discovered in the Van Buren residence. A search of the residence revealed a loaded and chambered Glock 30 .45 caliber handgun hidden in a mini-refrigerator,[9] a loaded SCCY CPX-2 9mm handgun underneath the mattress of Antonio Bailey's bed,[10] approximately a half-kilogram of marijuana, in aggregate, in the residence, multiple baggies containing a rock-like substance that field-tested positive for cocaine base, and multiple digital scales found in multiple locations in the residence.

Finally, Defendants Reid, Signou, Anthony Bailey and Antonio Bailey were all arrested in connection with this Indictment on June 26, 2023, at a residence located in the 200 block of Seaton Place NE. In advance of this operation, law enforcement officers had observed Anthony and

---

[6] DNA results indicate strong support for inclusion for Signou's DNA on this firearm.

[7] These firearms are associated with Antwon Bailey, brother to Anthony and Antonio, who has pleaded guilty to related charges in Criminal Case No. 1:22-cr-269 (BAH).

[8] DNA results indicate strong support for inclusion for Anthony Bailey's DNA on this firearm.

[9] This firearm is also associated with Antwon Bailey.

[10] DNA results indicate strong support for inclusion for Antonio Bailey's DNA on this firearm.

Antonio Bailey coming and going from the residence, with a Kia SUV utilized to come and go from the residence to the Kennedy Street corridor. When the residence was searched, a loaded Sig Sauer handgun was discovered in Anthony Bailey's bedroom, where he was also located. A narcotics sniffing dog was subsequently summoned by law enforcement, where it positively alerted to the presence of narcotics in the Kia SUV, which was parked in front of the Seaton residence. The vehicle was seized and is pending authorization to search after obtaining a vehicle search warrant, which is pending as of the date of this submission.

That Defendant Signou was discovered in the Bailey's residence on all three occasions is unsurprising, as he has been frequently surveilled with the Bailey brothers in the open-air drug market in the Kennedy Street corridor. One example of this surveillance is below, with Defendant Signou to the left and Defendant Anthony Bailey to the right.



So too, is the case for Defendant Reid, who has also been frequently physically surveilled

in the open-air drug market with co-Defendant Signou and the Bailey brothers. One such example of this surveillance is below, with, from left to right, Defendants Reid, Anthony Bailey and Signou circled:



Communications between these individuals further illustrate their collaboration in this conspiracy. For example, Antonio Bailey frequently utilizes social media to communicate with his customers to facilitate narcotics transactions. In the below sample from Antonio Bailey's Instagram, he (in green) arranges the sale of "za" (high-grade narcotics).



Moreover, communications indicate that Antonio Bailey appears to be a supplier of more than just the narcotics charged in the Indictment. The below communication, also from Antonio Bailey's Instagram is between him (in green) and Defendant Reid (in blue) discussing the acquisition of percs, in coordination with Turtle (Defendant Penn).

This is borne out by additional social media advertisements for narcotics sales by Antonio Bailey, including the below:



While the above-detailed physical recoveries have not all resulted in charges in the present in the Indictment, they are important for this Court's consideration under § 3142 for several reasons. First, it creates a separate basis for detention under § 3142(f)(1)(E), as each of these four individuals have been discovered in stash houses during their participation in the conspiracy where numerous firearms have been recovered. What's more, DNA results confirm for three of these four individuals, Defendants Signou, Anthony Bailey and Antonio Bailey, that they did in fact possess firearms during their ongoing drug trafficking conspiracy. This physical evidence is corroborated both by physical surveillance of these four individuals at the open-air drug market points, along with communications between the co-conspirators and to customers. The weight of the evidence both for their involvement in the conspiracy and for uncharged, yet relevant conduct, is strong.

Moreover, the recoveries tell a holistic about the role these four individuals and their role in the overall functioning of the KDY crew. In addition to their participation in the bulk smuggling

efforts of the DTO detailed *infra*, they have been frequently discovered in drug-related premises. As discussed in the introduction to this Memorandum, the KDY crew's activities and impact on the Kennedy Street neighborhood succinctly evidence the danger inherent in narcotics trafficking, particularly when conducted in conjunction with firearms. Over the duration of the conspiracy, there have been nearly 100 instances of firearms-related crimes in the neighborhood, an average of roughly two shootings, per month, for four years. This is notable because the figure does not even account for retaliatory shootings outside of the neighborhood. Put simply, the KDY crew is a driver of the ongoing pattern of cyclical, violent retaliation that exposes the Kennedy Street neighborhood to a significant amount of violence. These four individuals, through their conduct, contribute to that cycle. It is likely that the two stash houses described *infra* in this section of the Memorandum are only the two in which these four individuals have been located. Based upon their prior, continued involvement in the ongoing criminal conspiracy, it is likely that they would be found again in a drug-related premises, with firearms, were any of the four to be released. This factor weighs in favor of detention.

    viii.    *Angel Suncar – Count 1:*

This factor weighs in favor of detention. Suncar's social media activity reveals his role in the narcotics trafficking conspiracy. The below communication between Khali Brown (green text) and Suncar (blue text) bears this out.



Moreover, Suncar has been observed on his Instagram account in possession of firearms, notwithstanding his prohibited status, in addition to blatantly advertising the sale of apparent fentanyl. See below by way of example.





He has further been captured on surveillance engaging in multiple hand-to-hand transactions of suspected illegal narcotics. During one such transaction on March 10, 2023, Suncar visibly retrieved a white object from a plastic bag and transferred the object to a suspected buyer.



Surveillance law enforcement officers have observed Suncar at 1223 Kennedy Street NW, engaging in activity consistent with drug trafficking. For instance, on August 31, 2022, after law

enforcement observed advertisements for the sale of prescription pills and images of marijuana and a firearm on Suncar's Instagram account, law enforcement surveilled the location and observed Suncar emerging from that residence and weighing an amount of suspected marijuana onto a digital scale. More recently, on May 30, 2023, law enforcement captured on a covert camera by the same location Suncar emerging from that same residence, meeting with a female, and providing a small object from a plastic bag containing a white substance to the female.

On July 27, 2023, officers executed a search warrant at the same residence, 1223 Kennedy Street, NW, which is a location Suncar has consistently provided to law enforcement as his home address during prior arrests. There, he was arrested pursuant to the arrest warrant, and officers found therein two Glock firearms on his bed, magazines and ammunition in the dresser drawer by his IDs, 7 grams of suspected cocaine base, and 1 BB gun. Concerningly, during the search warrant execution, Suncar had what appeared to officers to be a pistol behind his leg as officers ascended the staircase towards him and provided repeated instructions to drop what he had. Instead of complying, he moved towards the bed and appeared to toss something, before ultimately acceding to the lawful commands of the police.

ix.   *Aaron Mercer – Counts 1 and 28:*

The evidence against Mercer is substantial and weighs in favor of detention. Mercer conducted eleven controlled buys with MPD undercover officers ("UCs") from January 2023 to May 2023, selling 127.85 grams of cocaine base and 329.26 grams of fentanyl, shown in the below chart.

| Date | Purchased |
|------|-----------|
| 01/11/2023 | 3.09 grams of crack cocaine |
| 01/13/2023 | 8.4 grams of crack cocaine |
| 01/18/2023 | 4.5 grams of crack cocaine, 4.0 grams of fentanyl |
| 01/19/2023 | 4.2 grams of crack cocaine, 7.9 grams of fentanyl |
| 01/27/2023 | 5.8 grams of crack cocaine, 16.3 grams of fentanyl |
| 02/02/2023 | 19.67 grams of fentanyl, 13 packaged THC gummies, 5 skull MDMA |
| 02/08/2023 | 5.6 grams of crack cocaine, 31.7 grams of fentanyl, 38 grams of MDMA gummies |
| 02/16/2023 | 3.5 grams of crack cocaine, 29 grams of fentanyl |
| 02/24/2023 | 55.6g of fentanyl |
| 03/23/2023 | 30.39 grams of crack cocaine, 57.60 grams of fentanyl |
| 05/16/2023 | 57.8 grams of crack cocaine, 57.09 grams of fentanyl |
| **TOTAL** | **127.85 grams of crack cocaine** **219.4g ms of fentanyl** **13 packaged THC gummies** **5 skull MDMA** **38 grams of MDMA gummies** |

These controlled buys were often video-recorded and unequivocally depict Mercer engaging in the above-outlined drug transactions. The recoveries are further documented, photographed, and their contents are confirmed by laboratory reports specifying the type of controlled substance and quantity. See below for example.





In one video from a controlled buy on March 3, 2023 (during which the UCs purchased 57.60 g of fentanyl and 30.39 g of cocaine base), Mercer explained to the UCs that he is capable of performing a larger sale as long as he is provided sufficient notice ahead of time so he can "invest [his] money" accordingly. He further told them that he had recently purchased a large quantity. He confirmed with the UCs that the next time they meet up for future transactions, he will have larger quantities available for them to purchase.

Since July 27, 2023, the evidence against Mercer has only strengthened. Residential search warrant executions at two residences associated with Mercer resulted in the following recoveries, which will likely result in additional charges being brought against Mercer, to include an additional mandatory minimum:

| 1206 Kennedy St, NW, #202 | <ul><li>Pyrex</li><li>baking soda</li><li>scale</li><li>white powder (.3 grams)</li></ul> |
|---|---|
| 715 18th St, NE Apt. 1 | <ul><li>**Ruger LC9 9mm pistol**</li><li>Two phones</li><li>Small amount of crack/cocaine</li><li> Pyrex dish possibly containing residue</li></ul> |

1206 Kennedy Street, NW is a location that Mercer has been observed entering and exiting before and after controlled purchases with UCs in May 2023. He has further been observed entering the building after a controlled buy and using a set of keys to enter Apartment 202.  The cameras at this building have generally shown him frequenting this apartment since at least January 11, 2023. Mercer was arrested at 715 18th Street, NE Apt. 1, where the firearm was recovered, which is a location that surveillance has captured Mercer exiting on June 8 and 9, 2023.

### C. The History and Characteristics of the Defendants

The history and characteristics of the defendants also weigh in favor of detention.

i.    *Kenneth Olugbenga:*

Kenneth Olugbenga is a convicted felon, having pleaded guilty in May 2021 to the unlawful transportation of marijuana in San Mateo County, California. The underlying circumstances of that conviction are familiar to one component of the overarching scheme of the KDY crew. On April 15, 2020, a checked luggage bag for United Flight 2372 from San Francisco International Airport to Washington Dulles International Airport was flagged as suspected to be containing narcotics. The bag was then designated for secondary screening, opened, and revealed to contain two large vacuum sealed bags of marijuana. TSA officers identified the bag as having been checked by Olugbenga, attempted to stop UA 2372 before takeoff, but were too late. After TSA officers seized the luggage, the marijuana bags were weighed, totaling roughly 26 pounds. On April 21, 2020, Olugbenga contacted SFO TSA and inquired about a lost item of luggage. TSA officers then reviewed footage of Olugbenga boarding UA 2372 and confirmed that the baggage was indeed checked by Olugbenga. This is Olugbenga's fourth drug-related arrest and only drug-related felony conviction.

Despite this felony conviction, it did not serve as a deterrent to Olugbenga's criminal

activity. Flight records establish that Olugbenga has made more than 50 round trip flights to either San Francisco or Los Angeles over the duration of this conspiracy, each with one or more of his co-conspirators, and often with quick turnarounds, suggesting his ongoing drug trafficking despite his prior felony conviction for related conduct.

The circumstances of Olugbenga's most recent arrest also weigh in favor of detention. On February 20, 2023, in the 500 block of Emerson Street NW, members of the MPD Fourth District Crime Suppression Team were utilizing a marked police cruiser when they observed a White Ford Econoline Van driving recklessly as it swerved into oncoming traffic to apparently pass a bicyclist. This Econoline is the same vehicle that Olugbenga has been observed utilizing in and around the open-air drug market at Kennedy Street since the beginning of this investigation.

MPD officers activated their emergency equipment and attempted to stop the Econoline, at which time it fled from law enforcement. After two failed stops, Olugbenga eventually stopped near the intersection of 7th and Longfellow Streets NW, immediately abandoned the vehicle, and fled. A D.C. Superior Court search warrant to search the van was received, and drugs, a firearm, and a ledger was recovered from the van, which in part forms the bases for multiple counts against Olugbenga in the present indictment. More relevant to this section is Olugbenga's conduct giving rise to the attempted traffic stop. Utilizing a vehicle he uses to traffic narcotics, he endangered pedestrians, refused to obey the directions of law enforcement officers, and then fled from police to avoid apprehension. Of note, Olugbenga was charged in D.C. Superior Court in connection with this incident,[11] placed on conditions of pre-trial release, and yet continued to serve as a leader within the KDY criminal enterprise.

Put simply, the Defendant's history and characteristics reveal that encounters with law

---

[11] The charges were dismissed in anticipation of the present Indictment.

enforcement do not deter his criminal conduct. This factor weighs in favor of detention.

ii.     *Khali Brown*

The Government respectfully refers the Court to page 3 of Khali Brown's PSR. Not reflected on the PSR is a no papered arrest for Khali Brown from May 30, 2023, for Assault on a Police Officer and Resisting Arrest. On that date, officers were at 1319 5th Street NW (confirmed on July 26, 2023, to be another stash house) for a call for service culminating in the arrest of two unrelated defendants. Khali Brown, who was on scene, requested to speak with a MPD official, so a sergeant responded. Khali Brown asked the sergeant whether he knew of an officer who was killed in the line of duty and intimated that the sergeant could be next. In response, the sergeant attempted to place Khali Brown under arrest for his threatening remarks. Khali Brown and his brother Miasiah attempted to prevent the arrest; Maisiah Brown grabbed two officers' arms to thwart the arrest, but both Khali and Maisiah Brown were ultimately arrested albeit not charged.

This was not Khali Brown's first demonstration of aggression towards the police, though. On May 6, 2019, he was arrested for resisting arrest at 623 Longfellow Street NW, where officers had responded for a disorderly. An individual associated with Khali Brown was detained and placed in a squad car when Khali Brown aggressively rushed towards an officer while screaming at him for placing his associate under arrest. The officer asked Khali Brown to back up multiple times, but Khali Brown refused to comply. When attempting to place Khali Brown in handcuffs for safety reasons, Khali Brown swung his arms and tried to run away. Ultimately, he was arrested but again not charged for this conduct. Even so, Khali Brown's behavior during both incidents is highly indicative not only of his dangerousness but of his complete disregard for authority, which should provide the Court with no confidence that the defendant would comply with any conditions of release it imposes upon him.

Beyond the numerous firearms attributable to Khali Brown, as outlined above, his music videos put a finer point on the dangerousness he presents. Specifically, the aforementioned NIBIN leads on the stash house firearms places in a chilling context the violent lyrics in Khali Brown's music videos. Generally, in his videos, Khali Brown glorifies violence, referring to himself by the tagline used among KDY crew members, "young and violent", and/or characterizing himself as part of "Seal Team 6" or "ST6", evoking militaristic tactics to eliminate the opposition. He is notorious for producing "diss" music videos taunting rival crew members, including those who have been murdered.

For example, in his music video, "Broke/Dead Opps," Khali Brown raps, "keep riding them bikes, get smoked like Slatt!"  "Slatt" is a reference to a decedent from a rival crew, 3500 (read, "Thirty-Five Double O"), who was shot and killed on September 29, 2019, in Washington, D.C. By referencing "Slatt" in a derogatory manner, Khali Brown appears to antagonize a rival crew by ridiculing the death of one of its members. Concerningly, among the aforementioned NIBIN leads linked to the firearms recovered on January 26, 2023, in the 1704 D Street NE stash house, one was used to shoot at this same decedent's family's house, suggesting that Khali Brown's lyrics in his rap videos extend beyond mere artistic expression. Generally, Khali Brown includes provocations against other rival crews, too, including the "Columbia Heights Village" crew ("CHV" or the "V") through lyrics and hand signs, as depicted below. Law enforcement interprets the below hand sign, commonly seen in KDY music videos, as advocating for gunfire directed at members of "CHV".



   iii.    _Miasiah Brown:_

        This factor weighs in favor of detention. Miasiah Brown's PSR does not reflect a July 4, 2022 arrest with a firearm. On that date, officers traveling along 1310 Childress Street NE observed a group of people, including Miasiah Brown, congregating in the area. Noticing Miasiah Brown's odd behavior as officers drove by, including an attempt to bend over and conceal his waist area, officers believed that he was armed and approached Miasiah Brown. Upon approaching, an officer noticed an angular-shaped object protruding from underneath Miasiah Brown's pants on his inner left thigh area. They pat him down and thereafter recovered a Glock 23 firearm that was loaded. Although the resulting arrest was not charged, it is still relevant to the determination on whether Brown should be detained in this matter. _See United States v. Taylor,_ 289 F. Supp. 3d 55, 69 (D.D.C. 2018).

        The Court's consideration should further extend to the circumstances surrounding Miasiah's and Khali Brown's no papered arrest from May 30, 2023, detailed _supra_, involving Maisiah Brown's aggressive conduct directed at officers in an attempt to thwart the arrest of Khali Brown.  Again, that this offense, too, was not ultimately charged is of no moment insofar as it still evinces a complete disregard for authority. What's more, that Miasiah Brown has persisted in surrounding himself with firearms and narcotics, as set forth above, notwithstanding these arrests,

should convince the Court that he is not amenable to supervision.

iv.      _Tristan Ware:_

This factor weighs strong in favor of Ware's detention. Ware has a demonstrated and concerning history involving firearms.  At the time Ware committed each of the offenses he was charged with, he was on supervised probation having plead guilty on October 7, 2021, to CPWL and Attempted Unauthorized Use of a Vehicle in D.C. Superior Court case number 2021 CF2 4535 and 2021 CF2 4536. In pleading guilty, Ware admitted to stealing a 2015 Jeep Grand Cherokee on August 1, 2021, and then, when arrested about a week later on August 9, 2021, pursuant to an arrest warrant, the defendant possessed a black 9mm Glock 17 pistol with an extended magazine capable of holding 31 rounds of ammunition and loaded with 23 rounds of ammunition. Video from the car theft incident shows Ware, moments before the car theft, readjusting his waistband, rendering visible what appears to be a firearm.





In sentencing Ware on December 16, 2021, the D.C. Superior Court judge noted significant concern over Ware's apparent possession of firearms on multiple occasions and ordered Ware to register as a gun offender as a condition of his sentence – a condition Ware has clearly flouted. The D.C. Superior Court judge sentenced the defendant under the Youth Rehabilitation Act over the government's objection and imposed two years of supervised probation.

In the relatively short time that Ware was placed on supervised probation, CSOSA submitted three Alleged Violation Reports ("AVRs") raising a litany of concerns. In a March 29, 2022 AVR, for example, CSOSA notified the Court that the defendant tampered with his GPS on multiple occasions, failed to report as directed four times between December 16, 2021, and March 28, 2022, and failed to drug test as directed on six different occasions in March 2022. In the June 22, 2022 and July 7, 2022 AVRs, CSOSA additionally notified the Court that the defendant failed to report for drug testing approximately 21 times between April 11, 2022 and July 6, 2022, failed to report as directed on June 30, 2022, and tested positive for Opiates on May 23, 2022.

Most concerning, and as detailed in the June 22, 2022 AVR, while on supervised probation

for carrying a firearm (among other things), the defendant was arrested in Washington, D.C. for the June 20, 2022 offense that he is now charged with in Counts 2 through 4.

The Government is aware, through law enforcement, that Ware is known within the community by his rapper name, "Greedy", and under this alias, has uploaded several video performances of hip-hop songs to YouTube. One clip, entitled "Clipped (Dir. 6ixTenVisuals) Prod. 100Banguapo #LLTALLSTEP," was uploaded on June 19, 2021. In this video, the defendant is depicted holding what appear to be multiple firearms in one hand and money in his other hand:



In a February 23, 2023 music video, posted almost one month after law enforcement searched 1704 D Street and arrested Ware and Khali Brown, among others, with ten firearms, Ware appeared in a music video with Khali Brown, aka "Migo Lee", flaunting firearms as shown below.





The above-outlined conduct showcases Ware's brazenness, penchant for firearms, and wholesale disregard for the release conditions imposed upon him by a judge who gave him an opportunity by sentencing him under the YRA. Ware's history can provide the Court with no confidence that he would comply with any less restrictive conditions, nor can it assure the Court that any such release conditions will mitigate the dangerousness he presents to the D.C. community.

v.     *Herman Signou:*

To his credit, Defendant Signou does not have any prior adult felony convictions. A closer inspection of his criminal history, however, shows a consistent pattern of criminal conduct involving firearms and narcotics. Since turning 18, Signou has prior arrests involving controlled substances, along with two separate arrests involving firearms. This conduct has been detailed more extensively, *infra*, but stated succinctly: Signou has been frequently discovered in stash houses where bulk quantities of narcotics and/or firearms have been recovered, including on at least one occasion where DNA results confirm that at least one of those recovered firearms belonged to him. If granted pre-trial release, when considering Defendant Signou's history and characteristics, it is highly likely this pattern of behavior will continue. This factor weighs in favor of detention.

vi.   *Cameron Reid:*

Defendant Reid's criminal history is minor and is a mitigating factor. Importantly, however, his arrest history does not capture his presence during prior interdictions, as detailed *infra*. Moreover, this is not his first controlled substances arrest. While this factor does not weigh in favor of detention, it does suggest that the charged conduct is not aberrational for the Defendant.

vii.   *Aaron Mercer*

This factor weighs in favor of detention.  Of note, Mercer has been previously convicted of two counts of Contempt for violation of his release conditions in D.C. Superior Court case 2017 DVM 921.  Moreover, on November 20, 2021, Mercer was arrested while in possession of a firearm and narcotics.  On November 20, 2021, at 5701 Georgia Avenue NW when officers arrived in the area in response to a recent spate of shootings and reports of gunshots in the area as well as complaints from citizens and business owners living and working in the immediate area.  An officer who encountered Mercer in his vehicle observed on the front passenger seat what she recognized as a magazine floor plate to a semiautomatic pistol protruding from an article of clothing.

Ultimately recovered from the vehicle was a 9mm ghost gun that was loaded.  On his person, Mercer had 11 grams of a hard white substance that field tested positive for cocaine base. He was also in possession of $247 in U.S. currency in small denominations.  Officers further recovered from the center console of the vehicle multiple white pills that appeared to be oxycodone hydrochloride.  Although Mercer was arrested and charged in this case, the case was dismissed at a preliminary hearing.  Even so, the Court in this posture may consider the facts surrounding the arrest in rendering a finding on whether Mercer should remained detained.  *See United States v. Taylor, 289 F. Supp. 3d 55, 69 (D.D.C. 2018).*

viii.   _Ronald Dorsey:_

Defendant Ronald Dorsey is a convicted felon, having pleaded guilty in December 2021 for possessing a firearm without a license. The circumstances of that conviction were that Dorsey was operating his vehicle, the Mercedes Benz sedan previously detailed in this memorandum, in Northeast D.C. in May 2021. The vehicle was equipped with counterfeit tags, a hallmark of KDY crew members, and after being asked to step out of his vehicle, was seen with a bulge in the groin area of his pants. He was found to be in possession of a loaded handgun.

In addition to his prior firearms conviction, the Defendant's criminal history reveals that he has been arrested twice prior for controlled substances offenses. Despite being on probation for the conclusion of his felony sentence, as well as the prior arrests involving controlled substances, Dorsey's criminal activity continued, included the distribution of narcotics for profit and the creation of shell companies to hide the proceeds thereof. This factor weighs in favor of detention.

ix.   _David Penn:_

Defendant David Penn's criminal history is extensive. Currently, Defendant Penn is under active criminal supervision for felony convictions in D.C. Superior Court (unauthorized use of a motor vehicle) and Prince George's County (carjacking). In addition to these current supervision cases, Penn has prior adult convictions for assault, controlled substances, and flight from law enforcement officers. What's more, Penn has prior juvenile convictions for robbery, unauthorized use of a motor vehicle, and assault. Put succinctly, Penn is a recidivist, committing the same types of offenses in repeated fashion, with no apparent deterrence effected despite his consistent apprehension by law enforcement.

In addition to the D.C. Superior Court and Prince George's County conviction for which Penn is under active supervision, there is an addition item in Penn's criminal history to be

considered by the Court. The incidents giving rise to Defendant's Penn's charges from February 2023 in the present Indictment occurred while he was wanted on multiple felony fugitive warrants stemming from charges in King George's County, Virginia. Defendant is a marked flight risk and has shown demonstrable disregard for court-ordered conditions of release. This factor weighs heavily in favor of detention.

     *x.*    <u>*Antonio Bailey:*</u>

Although Antonio Bailey's prior criminal convictions suggest minimal risk of flight or dangerousness, a closer inspection of his arrest history establishes that his history and characteristics weigh in favor of detention. With respect to disregarding orders of law enforcement, he has incurred four arrests, including one diversionary sentence, for resisting arrest (May 2022), failure to obey an officer (May 2022), assault on an officer and resisting arrest (January 2022), and assault on an officer, resisting arrest, and felony contempt (April 2020).

In addition to his history and characteristics suggesting an inability to comply with Court-ordered conditions of release, further inspection of Antonio Bailey's criminal history establishes that the conduct alleged in the Indictment is part of a pattern. As detailed *infra*, he has been found in stash houses with firearms and/or narcotics on multiple occasions. What's more, he has been arrested on six prior occasions for drug-related offenses and twice for firearms-related offenses. The Indictment reflects a consistent pattern of conduct, and this factor weighs in favor of detention.

     *xi.*    <u>*Anthony Bailey:*</u>

Defendant Anthony Bailey's criminal history reveals a repeated pattern of drug and firearms related arrests. He has three juvenile convictions, including for assault and felony contempt, which are relevant for considerations of pre-trial release. Moreover, he has been arrested on three different occasions for controlled substances offenses, along with two firearms-related

charges. What's more, he was arrested on Tuesday with a firearm in his bedroom and a vehicle he has been frequently using to travel to an open-air drug market is pending a search for narcotics. In sum, his arrest history tells a consistent story of his involvement in conduct similar to that charged in the Indictment.

Moreover, Anthony Bailey has exhibited prior failures to comply with orders by the court or law enforcement officers, including a January 2023 failure to appear and an October 2017 arrest for failure to obey an officer and resisting arrest. In total, Defendant Anthony Bailey's history and characteristics suggest a high likelihood of breach of any Court-ordered conditions of release. This factor weighs in favor of detention.

xii.     *Angel Suncar:*

This factor weighs in favor of detention.  Suncar presents with a violent criminal history – in D.C. Superior Court case 2014 CF3 671, he was convicted of Unlawful Possession of a Firearm, and in case number 2013 CF2 1548, he was convicted of Assault with Significant Bodily Injury. In 2014 CF3 671, Suncar's arrest and eventual conviction stems from officers responding to sounds of gunshots.  Upon officers' arrival at 1306 Longfellow Street NW, a witness advised that she heard gunshots and saw three men in the alley, one of whom was discharging a firearm before the men ran through 1306 Longfellow Street NW.  Officers knocked on the door of the residence and received consent to search from one of the inhabitants.  Thereupon, they observed Suncar entering the living room from the basement.  When an officer provided Suncar with verbal commands and attempted to pat him down, Suncar refused to comply.  Another officer observed the handle of a gun in Suncar's waistband.  Ultimately, they arrested Suncar and recovered from him the firearm. In 2013 CF2 1548, Suncar's conviction stemmed from his violent actions towards his significant other; he had punched her in the ear to the point of her losing hearing.  Of note, Suncar was

unsuccessful on supervision in both cases. For both cases, his supervised released was revoked and he was resultantly resentenced to 8 months' incarceration.

Not reflected on Suncar's PSR, though, is his April 26, 2022 arrest for unlawful possession of a firearm. During this incident, he was observed by officers running with a red bag in hand. He frantically entered a vehicle being operated by Mercer's significant other. Officers activated their lights, but the driver, with Suncar in the passenger seat, pulled off, fleeing from the parking lot. Another set of officers attempted to enter the parking lot and again ordered Mercer's significant other to stop the vehicle; she complied. Once Suncar was removed from the vehicle, officers observed the red bag wherein they found approximately 12.66 ounces of apparent marijuana. A K9 who swept the vehicle postiviely indicated, and upon searching the vehicle, officers recovered from under Suncar's seat, a loaded Glock 33. Another firearm was found under the driver's seat. Suncar had been arrested, although not charged, on three other prior instances for unlawful possession of a firearm on August 9, 2021; August 4, 2020; and August 19, 2017, all of which should be considered by the Court in rendering its detention decision. *See Taylor*, 289 F. Supp. 3d at 69.

### D. The nature and seriousness of the danger to any person or the community posed by the person's release

The fourth factor–the nature and seriousness of the danger to any person or the community posed by the person's release–also weighs in favor of detention. Each defendant's release poses a physical danger to the community.

The danger inherent in narcotics trafficking, especially when firearms are involved, is aptly exemplified by the circumstances surrounding the October 10, 2022 recovery of the Southbridge firearms and drugs. Indeed, the reason law enforcement was at that location in the first instance was in response to an emergency call for a shooting at that location. Although officers were unable

to find a victim in the house, despite the presence of a blood trail, they later learned that a family member of Khali, Keion, and Miasiah Brown was at the hospital being treated for gunshot wounds.

Here, the sixteen defendants have been charged in a large drug trafficking conspiracy that is having a horrifying impact on the local community. The series of violent events connected to some of the KDY firearms recovered thus far illustrate the very real danger that the KDY crew has on the community. Not only have KDY crew members targeted other rivals, but other rivals also appear to have targeted the members of the KDY crew, as exemplified by a triple homicide in KDY territory on September 4, 2021, claiming not just the lives of three individuals, but also resulting in gunshot injuries to Khali Brown and Anthony Bailey. The individuals charged in that homicide case are associated with a rival crew.

The evidence in this case has shown that the MLK Crew has access to drugs and guns and is willing to use violence to continue its operations. Each defendant's release would pose a serious danger to the community. Thus, this factor also weighs in favor of detention.

## CONCLUSION

For the reasons noted above, the government respectfully submits that clear and convincing evidence establishes that there are no conditions or combinations of conditions that will reasonably assure the safety of any other person and the community. The government also submits that a preponderance of the evidence establishes that each defendant is a serious risk of flight and no conditions or combinations of conditions will assure their appearance in Court. Accordingly, the government respectfully requests that the Court grant the government's motion to detain each defendant pending trial in this case.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

*/s/ Sitara Witanachchi*
SITARA WITANACHCHI
MATTHEW W. KINSKEY
Assistant United States Attorneys
Violence Reduction and Trafficking Offenses
601 D Street, NW
Washington, D.C. 20530

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 28, 2023, a copy of the foregoing Memorandum (in redacted form) was submitted via CM/ECF, which will transmit to counsel for the above-captioned defendants.


<u>/s/ Sitara Witanachchi</u>
Assistant U.S. Attorney